UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PREMIER DEALER SERVICES, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1498** |
| | **c/w  12-2790** |
| **TROY DUHON, ET AL.** | **SECTION: "H" (4)** |

### ORDER

Before the Court is Plaintiff, Premier Dealer Services, Inc.'s (Plaintiff) **Motion to Quash the Deposition of A. Kurt Wolery (R. Doc. 133)** moving this Court quashing the Deposition of A. Kurt Wolery ("Wolery") that was noticed by Defendants, Troy Duhon, et al. (Defendants) and Third-Party Plaintiffs, Premier Automotive Products, L.LC., set for October 28, 2013, at 9:30 a.m. Alternatively, Plaintiff moves for a protective order limiting the scope of Wolery's deposition to relevant, non-privileged information. The motion is opposed. (R. Doc. 137). It is was heard by oral argument on October 16, 2013.

### I.    Background

This action arises out of the alleged trademark infringement of Plaintiff, Premier Dealer Services, Inc.'s ("Premier Dealer") customer loyalty programs and other products for interstate automobile dealers.  (R. Doc. 1, p. 5).  This action has been ongoing for quite some time.  The crux of this dispute centers around customer loyalty programs used for interstate automobile dealers. (R. Doc. 1, p. 5). Premier Dealer alleges that Defendants, which included Troy Duhon and Premier

Automotive[1] were contacted in 2010 by Premier Dealer's agent, now third-party defendant, Dealer Services South, Inc. ("DSS"). *Id.* at 7. Defendants allegedly indicated that they were interested in participating in the program. *Id.* DSS then established a relationship with Defendants, sharing certain proprietary business information with them. *See id.*

On January 10, 2011, Premier Dealer alleges that Defendants indicated their willingness to enter a long-term business relationship with it. *Id.* On September 20, 2011, Premier Dealer alleges that it entered into contracts called "Administration Agreements" with each of the Defendants. *Id.* at 8. These Agreements required Defendants to participate in the Lifetime Powertrain Protection and Lifetime Engine Protection plans, to arrange for insurers, and to process claims. *Id.* The Agreements also included provisions regarding the use of Premier Dealer's intellectual property and proprietary information. *See id.*

Premier Dealer alleges that it subsequently learned that Defendants had copied its marketing and administrative materials, in contravention of the Administrative Agreements. *See id.* at 9. Premier Dealers allege that Defendants' true intention was not to enter into a business relationship with it, but rather to gain access to Premier Dealers' materials, training expertise, and trade secrets. *Id.* at 10.

As to the instant Motion, Plaintiff, moves this Court quash the deposition of Wolery, Plaintiff's corporate attorney, in-house counsel and Senior Vice President of Legal, Compliance and Human Resources, that was noticed by Defendants, Troy Duhon, et al. (Defendants) and Third-Party Plaintiffs, Premier Automotive Products, L.LC., set for October 28, 2013, at 9:30 a.m. (R. Doc. 133-1, p. 1.) Plaintiff argues that Wolery has been a part of its trial team since the filing of its lawsuit

---

[1]Premier Dealer also sued Scott Neitert, ("Nietert") Wayne Skinnard, ("Skinnard") Premier Nissan of Fremont

in 2012. Plaintiff also argues that Wolery has held litigation strategy discussions with undersigned counsel, directed the course of the action, decided on trial strategy, edited pleadings held conferences with potential witnesses, and assisted in gathering and reviewing relevant documents. *Id.* at 2.

Therefore, Plaintiff argues that Wolery's communications are protected by work-product and attorney-client privilege. *Id.* Alternatively, Plaintiff moves for a protective order limiting the scope of Wolery's deposition to relevant, non-privileged information. *Id.* The motion is opposed. (R. Doc. 137).

## II.   Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)) Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less

burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(C). In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2)(C)(iii).

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Rule 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending–or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c). Specifically, under subsection (c)(1)(g) of Rule 26, a protective order may be entered "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

Rule 45 governs the issuance of subpoenas, and provides that on timely motion, the issuing

4

court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(c)(3). "In general, the burden of demonstrating the applicability of the privilege rests on the party who invokes it."*Nat'l West. Life Ins. Co. v. West. Nat. Life Ins. Co.,* 2010 WL 5174366, at *2 (W.D. Tex. Dec. 13, 2010); *citing* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008); *Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury,* 768 F.2d 719, 721 (5th Cir. 1985). Under Rule 45, a Court must quash or modify a subpoena that fails to allow a reasonable time to comply, requires the disclosure of privileged or protected matters, or subjects a person to an undue burden. Fed.R.Civ.P. 45(c)(3)(A)(i), (iii) & (iv).

### III.    Analysis

Plaintiff moves this Court quash the deposition of Wolery on the grounds that he is Plaintiff's corporate attorney, in-house counsel and Senior Vice President of Legal, Compliance and Human Resources, and that he has allegedly been a part of its trial team since the filing of its lawsuit in 2012.(R. Doc. 133-1, p. 1.) Plaintiff also argues that Wolery has held litigation strategy discussions with undersigned counsel, directed the course of the action, decided on trial strategy, edited pleadings held conferences with potential witnesses, and assisted in gathering and reviewing relevant documents. *Id.* at 2. Therefore, Plaintiff argues that Wolery's communications are protected by work-product and attorney-client privilege. *Id.* Alternatively, Plaintiff moves for a protective order limiting the scope of Wolery's deposition to relevant, non-privileged information. *Id.*

In opposition, Defendants also argue that Wolery is not "opposing counsel" or "trial counsel" as Plaintiff contends, as he is not enrolled in this matter. (R. Doc. 137, p. 2). Therefore Defendants argue that the *Shelton* test should not apply to Wolery's deposition. *Id.* In the alternative,

Defendants argue that if the Court finds that *Shelton* does apply, they should be permitted to take Wolery's deposition because they satisfy the three-prong *Shelton* analysis. *Id.* at 8-9. Defendants argue that Wolery testimony is highly relevant as they contend that he has the most relevant knowledge of this case, as he allegedly had "unprivileged conversations" with Marc Mader, the CEO of Third-Party Defendant, Dealer Services South ("DSS") who may have forged the administrative agreements that are at the center of this dispute. *Id.* Defendants argue that there is no other reasonable means for it to obtain information "surrounding the execution of the agreements" which are at the center of the dispute, as Plaintiff claims that upon Defendants allegedly signing the agreements, they were forwarded to Wolery for execution. *Id.* at 9. Defendants contend that there is no other witness that could "plausibly provide this information," and for this reason, seeks to depose Wolery. *Id.* Therefore, Defendants contend that Plaintiff's motion should be denied and the deposition should proceed forward.

The Federal Rules of Civil Procedure as well as Fifth Circuit precedent do not expressly prohibit the taking of in-house counsel depositions. Although several districts within the Fifth Circuit caution about the taking of in-house counsel and or opposing counsel depositions, there is not an express prohibition thereon. *See Nat'l West. Life Ins. Co.,* 2010 WL 5174366, at *2; *citing Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999) (deposition of in-house counsel prohibited after court's determination that it was not the status of the lawyer being deposed as that of trial lawyer, but instead depended on the extent of the lawyer's involvement in the litigation).

Courts in the Fifth Circuit have applied the three-prong test established by the Eighth Circuit in *Shelton v. American Motors Corp.,* to determine circumstances when in-house counsel should be subject to being deposed. *Nguyen v. Excel Corp.,* 197 F.3d 200 (5th Cir. 1999). See *Shelton,* 805

6

F.2d 1323(8th Cir.1986). *See Nat'l Western,* at *2; *Houston Cas. Co. v. Supreme Towing Co., Inc.,* 2011 WL 5326061, at *4 (E.D. La. Nov. 4, 2011); *Murphy v. Adelphia Recovery Trust*, 2009 WL 4755368 at * 3 (N.D. Tex. Nov. 3, 2009) (rejecting argument that *Shelton* factors should only be applied to trial counsel). The *Shelton* factors are: (1) The deponent must show that no other means exist to obtain the information than to depose the opposing counsel; (2) The information sought must be relevant and non-privileged; and (3) The information sought must be crucial to the preparation of the case. *See Nat'l Western,* at *2; quoting *Nguyen,* at 209; citing *Shelton*, 805 F.2d at 1327.

However, several courts within the Fifth Circuit have found that when an attorney's role in a case is more akin to a "mere business advisor," for a company in an action, he does not constitute "opposing counsel," and therefore *Shelton* factors do not warrant an application. *Nat'l West. Life Ins. Co.,* at *3; *see also Advanced Tech. Incubator, Inc., v. Sharp Corp.,* 263 F.R.D. 395, 399 (W.D. Tex. 2009); *Wright v. Life Investors Ins. Co. of America*, 2009 WL 4347024, at *3 (N.D. Miss. Nov. 24, 2009) (finding that *Shelton* factors were not controlling since lawyer acted primarily in a business capacity).

Here, Plaintiffs argue that Wolery has been involved in the instant litigation from its inception as a part of its trial team. However, Plaintiff's have not provided the Court with evidence as to Wolery's role in litigation strategy or how he directed the course of this litigation. Furthermore, Wolery is not enrolled in this matter, nor has he been enrolled *pro hac vice* so as to sign or file pleadings into the record. Plaintiffs have also failed to provide an affidavit or sworn testimony of Wolery stating otherwise. Therefore, the Court finds that Wolery's role is not that of trial counsel or opposing counsel, as he is more comparable to a mere business advisor who may be able to provide testimony as to any advice given to Plaintiff on the contract and business negotiation

agreement that occurred before litigation began. Accordingly, an application of *Shelton* is not necessary under this circumstance.

Alternatively, the Court finds that an application of the *Shelton* factors here would yield the same result as not applying the *Shelton* factors. Defendants meet the first prong of the *Shelton* test, by demonstrating that there is not likely another means of determining the circumstances surrounding the execution of the administrative agreements that are at the center of this litigation as Wolery, as in-house counsel, would likely be involved in contract negotiations on behalf of Plaintiff.

As to the second prong, the Court finds that Mader's credibility is central to this dispute, as he is Plaintiff's lead witness. Therefore, Wolery's testimony is highly relevant as to the negotiations of the agreements that took place between Defendants and DSS. *See* R. Doc. 133-1, p. 6. Furthermore, the Court finds that not all communications between Wolery and Plaintiff would constitute work product and or attorney client privilege, as the contract negotiation discussions at issue occurred before litigation this litigation began. Therefore, the Court finds that the second factor of *Shelton* has also been satisfied.

As to the final prong, the Court finds that Wolery's testimony is "crucial" as the only source of information regarding the contracts and the negotiations that took place, to help attest to the credibility of Mader. Furthermore, Defendants have failed to establish that Wolery had any part in the negotiation of the contracts / administrative agreements that are central to this dispute, other than his signature of these agreements on behalf of Plaintiff after they were completed.

**IV.     Conclusion:**

**IT IS ORDERED** that **Motion to Quash the Deposition of A. Kurt Wolery (R. Doc. 133)** is **DENIED**. The Court finds that because the deposition may give rise to attorney-client and or work-product issues, the parties are encouraged to contact the Court for its assistance.

New Orleans, Louisiana, this 18th day of October 2013

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**