## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PREMIER DEALER SERVICES, INC.**                    **CIVIL ACTION**

**VERSUS**                                           **NO: 12-1498**
                                                     **c/w   12-2790**

**TROY DUHON, ET AL.**                               **SECTION: "H" (4)**

### ORDER

Before the Court is Defendants, Troy Duhon, ("Duhon") and Premier Automotive Products, LLC's, ("Premier Automotive") (collectively, "Defendants") **Second Motion to Compel Discovery Responses (R. Doc. 100)**, seeking an Order from this Court compelling Plaintiff, Premier Dealer Services, Inc., ("Premier Dealer") to provide the documents listed in an email log, compel Premier to conduct a more thorough search of its computers and records, as ordered by this Court in its previously heard Motion to Compel (R. Doc 74), and for an award of reasonable attorney's fees and costs.  (R. Doc. 100).  Premier opposed the motion  (R. Doc. 106). The motion was heard by oral argument on September 4, 2013.

## I.    Background

This action arises out of the alleged trademark infringement of Premier Dealer Services, Inc.'s ("Premier Dealer") customer loyalty programs and other products for interstate automobile dealers.  (R. Doc. 1, p. 5).  This action has been ongoing for quite some time.  The crux of this dispute centers around customer loyalty programs used for interstate automobile dealers. (R. Doc.

1, p. 5). Premier Dealer alleges that Defendants, which included Troy Duhon and Premier Automotive[1] were contacted in 2010 by Premier Dealer's agent, now third-party defendant, Dealer Services South, Inc. ("DSS").  *Id.* at 7.  Defendants allegedly indicated that they were interested in participating in the program. *Id.* DSS then established a relationship with Defendants, sharing certain proprietary business information with them.  *See id.*

On January 10, 2011, Premier Dealer alleges that Defendants indicated their willingness to enter a long-term business relationship with it.  *Id.*  On September 20, 2011, Premier Dealer alleges that it entered into contracts called "Administration Agreements" with each of the Defendants, which required Defendants to participate in the Lifetime Powertrain Protection and Lifetime Engine Protection plans, to arrange for insurers, and to process claims. *Id.* at 8. The Agreements also included provisions regarding the use of Premier Dealer's intellectual property and proprietary information.  *See id.*  Premier Dealer alleges that it subsequently learned that Defendants had copied its marketing and administrative materials, in contravention of the Administrative Agreements, which indicates that Defendants' true intention was not to enter into a business relationship with it, but rather to gain access to Premier Dealers' materials, training expertise, and trade secrets. *Id.* at 9.

As to the instant Motion, Defendants' allege that Premier has failed to comply with the Court's June 19, 2013 Order granting in part their motion to compel production of documents.  (R. Docs. 71, 91).  Specifically, Defendants argue that this Court found Premier's initial production "to be inadequate and ordered [Premier] to hire an IT consultant to search [its] computers and servers for responsive emails and documents." (R. Doc. 100). Defendants argue that Premier contended it

---

[1]Premier Dealer also sued Scott Neitert, ("Nietert") Wayne Skinnard, ("Skinnard") Premier Nissan of Fremont

2

had uncovered "several hundred emails" but only supplemented its initial response with four additional emails, claiming that the work-product doctrine and or the attorney client-privilege applied to the bulk of the remaining emails that were discovered. *Id.*  Accordingly, Defendants filed the instant motion seeking this Court compel the production of documents as ordered by this Court's previous order, or produce the emails to the Court for an in camera review.  *Id.*

## II.    <u>Standard of Review</u>

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."  Rule 26(b)(1).  The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Rule 26(b)(2)(C).  In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the

parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party in its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id.* However, such materials may be discoverable when either allowed by Rule 26(b)(1), or when a party shows a "substantial need" for the information and that obtaining the information by another means would pose an "undue hardship." *Id.*

Rule 33 requires a party to whom interrogatories are propounded to respond within 30 days. Rule 33(b)(2)(A). Similarly, Rule 34 provides that "[t]he party to whom the request is directed must respond in writing within 30 days after being served." *Id.* at 34(b)(2)(A).

Rule 34 further provides that a party may request another party to produce "any designated documents or electronically stored information . . . stored in any medium from which information can be obtained." *Id.* at 34(a)(1)(A). This request "must describe with reasonable particularity each item or category of items to be inspected." *Id.* at (b)(1)(A). "For each item or category, the response must either state that inspection . . . will be permitted as requested or state an objection to the request, including the reasons." *Id.* at (b)(2)(B).

Finally, Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection . . . [if] a party fails to answer an interrogatory submitted under Rule 33, or if a party fails to respond that inspection will be permitted - or fails to permit inspection - as requested under Rule 34." Rule 37(a)(3)(B).

### III.   Analysis

#### 1.   Privilege Issues

The central issue surrounding Premier Dealer's production of its "privilege logs" and the emails discovered from the search conducted by the IT personnel, is whether that information is "privileged" under the work product doctrine or attorney client privilege.

Specifically, Defendants argue that as per this Court's June 19, 2013 Order, Premier Dealer was ordered to perform a search on their server for emails that were responsive to Defendants' requests. *See* R. Doc. 100-2, p. 4; R. Doc. 89. After the search was conducted, Defendants contend that Premier Dealer represented that several hundred emails were found. *See* R. Doc. 100, p. 1. However, Defendants argue that Premier Dealer only produced four additional emails, only one of which was not already in its possession, and claimed work-product and attorney client-privilege over most of the remaining emails. *Id.* at 2.

Defendants contend that as to the fifty emails allegedly "privileged" all but one of these is to or from Mr. Mader, therefore, they should not be considered privileged, as Mr. Mader is "not a party to this litigation." Defendants argue that Premier has failed to meet its burden that the emails are entitled to protection under the work product and/or attorney client confidentiality privileges. *Id.* Defendants contend that a document is work-product if its primary purpose is "legal assistance," and applies to materials prepared in anticipation of litigation which set "forth the attorney's theory of the case and [its] litigation strategy." *Kiln Underwriting Ltd. v. Jesuit High Sch. of New Orleans*, CIV.A. 06-04350, 2008 WL 108787, at *4 (E.D. La. Jan. 9, 2008) (M.J.Roby) (quoting *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)).

Defendant's argue that the privilege logs fails to meet this burden, as many of the emails are

general subject matter, and not related to legal matters.  *See* R. Doc. 100-2, p. 9-11. Furthermore, to the extent that they are related to legal matter, there classification is ambiguous, and not specific. Therefore, Defendants seek an order from this Court compelling production of the logs, or in the alternate, have this Court   review the emails listed in the privilege logs *in camera,* so to determine whether they are in fact entitled to protection. *Id.* at 11-12.

In its opposition, Premier contends that the IT expert's search allegedly produced 1030 emails, of which 775 contained "one or more of the search terms, but were completely irrelevant to this lawsuit." R. Doc. 106, p. 5.  Premier further contends that the results contained approximately 202 additional emails with one or more of the search terms, but were "exchanged between Premier and undersigned counsel," thereby protected by work-product. *Id.*   Furthermore, Premier contends that Mader is an agent or "representative" of the party in litigation, thereby his communications do constitute work product, as litigation between the parties was anticipated as early as November 2011. *Id*. at 107.  Therefore, all of Mader's emails in the privilege log post from this point forward should be considered work product.  *Id.*

During oral argument, the Court determined that Defendants request pertained in large part to Request for Production No. 28, although they had not expressly delineated in their motion which requests were at issue. Premier Dealer argued that it did not purposefully withhold the search results, but that it sought to produce the results to the Court for an *in camera* review. Therefore, Premier Dealer provided the Court with a CD-ROM of the results of from the server search log that was produced by the server search. Due to formatting issues, the disk's attachments were not readable, however, from the information that was ascertainable, the Court determined that the disk contained emails, or e-documents, but were not an actual privilege log. Therefore, on September 27, 2013, the

Court ordered Premier Dealer to "produce an actual privilege log" which conformed to Rule 26, or the actual e-documents for the Court to conduct its *in camera* review. *See* R. Doc. 135.

Premier Dealer complied with the Court's Order in addition to the documents which were contained on the CD-Rom. Because Premier Dealer asserted either or both the work product and or attorney client privilege as to each of the emails, the court shall analyze them as follows:

### A.   <u>Work Product Doctrine</u>

Premier Dealer argues that the work product doctrine applies to emails produced between Kurt Wolery and Marc Mader,[2] emails between Marc Mader, Kurt Wolery, John Topits, and Carlo Wessels,[3] emails between Kurt Wolery , Carlo Wessels, Marc Mader and an individual with the email address of "klosterman@hemmerlaw.com,"[4] and emails between Rusty Messer, attorney for DSS, and Brad Luminais, attorney for Premier Dealer.[5]

The work-product doctrine protects materials prepared by or for in attorney in preparation for litigation. *Hickman v. Taylor*, 329 U.S. 495 (1947). "The law of [the Fifth C]ircuit is that privilege can apply where litigation is not imminent." *In re Kaiser Aluminum and Chemical Co.*, 214 F.3d 586, 593 (5th Cir.2000); *Crosby v. Blue Cross Blue Shield of Louisiana*, No. 08–693, 2012 WL 5450040, at *7 (E.D. La. Nov. 7, 2012) (Roby, M. J.) (applying Kaiser to letter written by attorney to client regarding interpretation of client's medical policy, which contained language such as "we can argue"). Specifically, it may be also be asserted "as long as the primary motivating purpose

---

[2] Privilege Log Document Nos: 1, 2, 3, 4, 7, 8, 9, 10, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49.

[3] Privilege Log Document Nos: 5, 6.

[4] Privilege Log Document Nos: 11, 12, 30.

[5] Privilege Log Document No. 31.

7

behind the creation of the document was to aid in possible future litigation." *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir.1982). "The work product doctrine does not exist to protect a confidential relationship but to promote the adversary system by 'safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent.'" *Blockbuster Entertainment Corp. v. McComb Video, Inc.,* 145 F.R.D. 402, 404 (M.D. La.1992) (*quoting Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir.1989) (emphasis added).

Moreover, the work product doctrine extends only to documents and tangible things produced "by or for" an attorney preparing for litigation; the protection does not extend to the "underlying relevant facts." *Blockbuster*, 145 F.R.D. at 403–04 (M.D.La.1992). The burden of asserting work product rests with the party who seeks to assert it. *Hodges, Grant & Kaufman v. U.S. Government*, *Dep't of the Treasury*, I.R.S., 768 F.2d 719, 721 (5th Cir.1985).

"The test for work-product protection is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Kansas City Southern Railway v. Nichols Construction Co., L.L.C.*, Nos. 05–1182, 05–220, 05–4653, 2007 WL 1792352, at *2 (E.D. La. June 20, 2007) (internal quotation marks omitted).

Courts have looked to factors including whether (1) counsel had been retained, (2) the retained counsel was involved in the general of the document, and (3) the document was created out of a "routine practice" or in connection with particular circumstances. *See Hercules Lifeboat Co., L.L.C. v. Rice,* 2012 WL 4483557, at *1 (W.D. La. Sept. 26, 2012). Other courts in this district have found that "[i]f the document would have been created regardless of whether the litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not

8

in anticipation of litigation." *Piatkowski v. Abdon Callais Offshore, L.L.C.,* No. 99–3759, 2000 WL 1145825, at \*1 (E.D.La. Aug, 11, 2000) (emphasis added); *Southern Scrap Material Co. v. Fleming*, 2003 WL 2147516, at \*6 (E.D. La. June 18, 2003). "The mere fact that litigation is pending does not transform everything done by or for a party into work product worthy of protection." *Piatkowski*, 2000 WL 1145825, at \*2.

After conducting the *in camera* review of the privilege log of emails / e-documents produced to the Court, the Court finds that the bulk of the emails for which Premier Dealer claimed the work-product doctrine involved communications which took place after litigation began, but had nothing to do with the ongoing action. For example, several of the emails involved the parties ability to open files with e-signatures,[6] and or pertained to setting up client meetings.[7] As stated above, the mere fact that litigation is pending will not transform "everything done by, for or [involving] a party into work product worthy of protection." *See Kansas City Southern Railway,* at \*2; *Piatkowski*, 2000 WL 1145825, at \*2. Accordingly, the Court finds that the work product doctrine does not apply to the following e-document numbers: 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49.

However, the Court finds that the work-product doctrine does apply in full to the following e-document numbers: 1, 2, 32, and in part as to numbers 19 and 20,[8] as these documents were either prepared in anticipation or prospect of litigation, and involved communications between Kurt

---

[6]*See* Privilege Log Document Numbers 12 and 13.

[7]*See* Privilege Log Document Number 18.

[8]Privilege Log Document No. 19 is privileged in part as to 7/14/12, 6:41 p.m., but is not privileged as to 6/1/12, 4:49 p.m. Privilege Log Document No. 20 is privileged in part as to 12/5/12, 13:08:10, but is not privileged as to 12/5/12, 12:46 p.m.

Wolery, in-house counsel for Premier Dealer, and or Marc Mader, regarding preparation and or anticipation of the pending litigation.

The Court also finds that the work-product doctrine applies to Privilege Log Document Numbers 8 and 9, as these emails involve communications between Kurt Wolery and Marc Mader. Although Marc Mader is not a party to this action, these two communications involved the mental impression of Kurt Wolery, as he was investigating topics necessary to better prepare Premier Dealer for the ongoing litigation.  Therefore, these two documents fall under the work-product doctrine and not subject to disclosure. *See Conoco v. Boh Bros. Const. Co.,* 191 F.R.D. 107 (W.D.La. 1998) ([t]he work-product doctrine protects documents and other tangible things prepared by a party or representative of a party, including attorneys, consultants, agents, or investigators in anticipation of litigation) (citing *Hickman v. Taylor*, supra.; *Thomas v. General Motors Corp*., 174 F.R.D. 386, 388 (E.D.Tex.1997); *United States v. Nobles*, 422 U.S. 225 (1975)).

### B.   Attorney Client Privilege

Premier Dealer argues that attorney client privilege prohibits discovery of emails produced between Kurt Wolery and Marc Mader,[9] emails between Marc Mader, Kurt Wolery, John Topits, and Carlo Wessels,[10] emails between Kurt Wolery , Carlo Wessels, Marc Mader and an individual with the email address of "klosterman@hemmerlaw.com,"[11] and emails between Rusty Messer, attorney for DSS, and Brad Luminais, attorney for Premier Dealer.[12]

---

[9]Privilege Log Document Nos: 1, 2, 3, 4, 7, 8, 9, 10, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49.

[10] Privilege Log Document Nos: 5, 6.

[11] Privilege Log Document Nos: 11, 12, 30.

[12] Privilege Log Document No. 31.

The attorney-client privilege shields "communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice," and "communications from the lawyer to the client, at least if they would tend to disclose the client's confidential communications." *Crosby v. Blue Cross Blue Shield of La.,* 2012 WL 5450040, at *6 (Nov. 7, 2012); citing *Hodges, Grant & Kaufman v. United States Government,* 768 F.2d 719, 720–21 (5th Cir.1985). "The application of the attorney-client privilege is a question of fact, to be determined in light of the purpose of the privilege and guided by judicial precedents." *Id. See United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir.1994). "The involvement of an attorney is not dispositive of the 'in anticipation of litigation' issue. Nevertheless, involvement of an attorney is a highly relevant factor." *Transocean Deepwater, Inc. v. Ingersoll–Rand Co.*, No. 08–448, 2010 WL 5374744, at *3 (E.D. La.2010).

Kurt Wolery is Premier Dealer's in-house counsel, but is not a part of its trial team. Generally speaking, the communications of Kurt Wolery, under the right circumstances may be protected by the attorney-client privilege, if the dominant purpose of the communication is to further the objectives of the attorney-client relationship. The reality is that the attorney-client privilege does not apply to an in-house counsel communication where the in-house counsel was acting as a negotiator or providing business advice. *TVT Records v. Island Def Jam Music Grp.,* 214 F.R.D. 143 (S.D. N.Y. 2003). [13]

In this case, Premier Dealer contends that Mader was its agent because he was contracted to sell its automotive repair warranty, therefore his communications with Wolery are protected by the attorney-client privilege. Privilege agents include non-employees, such as paralegals and

---

[13]Several courts within the Fifth Circuit have found that when an attorney's role in a case is more akin to a "mere business advisor," for a company in an action, he does not likely constitute counsel for privilege purposes, as he also does not constitute opposing counsel for deposition and or discovery purposes. *Advanced Tech. Incubator, Inc., v. Sharp Corp.,* 263 F.R.D. 395, 399 (W.D. Tex. 2009).

investigators. The presence of these types of third party agents does not waive the privilege if their presence was to facilitate effective communication between lawyer and client or further the representation in some other way. Privileged agents are sometimes grouped into two categories: (1) Communicating agents; and (2) Representing agents. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70 cmts. f, g (2000) 24 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure, § 5483 Supp. (2009) (discussing communicating and source agents).

Both lawyers and clients will typically have communicating agents, who enable the lawyers and clients to communicate effectively. *See id., see e.g.,* Wigmore, John H., Evidence § 2317 (Supp. 2009). The most common example of communicating agents are employers such as couriers and secretaries. *See e.g., U.S. ex rel. Miller v. Bill Harbert Intern. Const., Inc.,* No. 95-1231 (RCL), 2007 WL 915235, at *2-3 (D.D.C. March 27, 2007) (presence of client's assistant did not waive privilege when assistant's job was to witness documents and ensure a record of their creation).  In contrast, representative agents include confidential assistants of the lawyer such as a file clerk or paralegal assistant.  *Hilton-Rorar v. State & Fed. Comm. Inc.,* No. 5:09-CV-01004, 2010 WL 1486916, at *4 (N.D. Oh. Apr. 13, 2010). Representing agents can also include any subordinate or agent of the attorney if the attorney uses the agent to facilitate legal advice and supervises the agent's actions.  *See supra,* RESTATEMENT (THIRD) § 70 cmt. g (2009). *See also United States v. Ackert*, 169 F.3d 136, 139 (2nd Cir. 1999).[14]

---

[14] In *Ackert,* the Second Circuit reversed the District Court's ruling that conversations between a corporate attorney and an investment banker, who was also an attorney, were privileged because the purpose of the conversation was for the attorney to better understand a transaction to provide better legal advice to the parties joint client. The main reason why the Court found that the attorney client privilege did not apply was because the banker was not functioning as an attorney for the particular transaction for which the privilege was claimed. *See also, United States Postal Serv. v. Phelps Dodge Refining Corp.,* 852 F. Supp. 156 (E.D.N.Y. 1994) (where the court found that outside scientific consultants hired to conduct an environmental audit and oversee remedial work were not the attorney's agents for purposes of the privilege).

In this case, Mader is neither a communicating or representing agent, in fact, his services were business related, i.e., the sales of automotive warranty. As a result, his communications with Wolery are not privileged pursuant to the attorney-client privilege. Furthermore, the Court finds that although the unidentified email address recipient "khlostermann" may be an attorney of Marc Mader, this fact has not been substantiated by the parties. Because the burden to establish that attorney-client privilege applies is on the party asserting the privilege, the Court finds that Premier Dealer and/or Marc Mader has failed to provide evidence substantiating an assertion of the privilege is warranted. Accordingly, the Court finds that the attorney client privilege does not apply to any of the privilege log documents. Thereby, Premier Dealer is ordered to produce all Privilege Log Document Numbers: 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49; as they are not protected by either the work-product or attorney client privilege doctrines.

## 2.    **Trade Secret / Confidential Information**

Finally, Defendants argue that Premier has not yet turned over any documents to support its trade secret claims, which should have also been turned over in the supplemental requests. (R. Doc. 106, p. 3).  Specifically, Plaintiff cites to RFP No. 17:

**REQUEST FOR PRODUCTION NO. 17:**

> Please produce any and all trade secrets, confidential and proprietary data and information that you alleged was misappropriated by the Entity Defendants, including, but not limited to, training materials, window stickers, car toppers window hangers, loss rations, data entry, data reports, and sessions statements.

**RESPONSE TO REQUEST NO. 17:**

> Plaintiff objects to this Request as vague, ambiguous, and to the extent it seeks the description, identification, or explication of any "trade secret" or other proprietary or confidential information, data compilation, or business method without a protective order or confidentiality agreement in place between the parties. Subject to and without waiving said objections, please see: 1) copies of Plaintiff's training materials, loss ratio charts, data reports, and session statements (PDS 000063-000078 and

DSS 000065-000081); Plaintiff is also in possession of additional materials that will be produced as soon as a protective order is in place among the parties); and 2) copies of Plaintiff's marketing materials, including: window stickers, car toppers, window hangers, etc. (Defendants previously inspected and photographed the referenced items; undersigned counsel will maintain the items at his office through the course of litigation).

Accordingly, Premier contends that it limited additional documentation because the parties have not agreed to and submitted a confidentiality order accepted by this Court. *Id.* at 4. Premier argues that it has attempted to confect this agreement, but the last submitted protective order was denied by this Court. *Id. See* R. Doc. 93.

During oral argument the parties expressly stated that they would enter into a protective order. Since the submission of this motion, they have done so. *See* R. Doc. 134. Because a protective order was filed into the record on September 26, 2013, the Court finds that this issue is now moot. Accordingly, Defendants request to compel trade secrets is denied as moot.

## C.     Attorney's Fees and Costs

As noted above, Defendants seek an award of attorney's fees and costs in connection with their filing the instant motion. (R. Doc. 100). In opposition, Premier does not address this argument.     Rule 37 provides that when a party prevails on its Motion to Compel, the Court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion." Rule 37(a)(5)(A). However, the Court must not award such fees when the opposing party's conduct was "substantially justified." *Id.* at 37(a)(5)(A)(ii). Moreover, where a motion to compel is granted in part and denied in part, the Court may, at its discretion, either deny fees, award fees to one party, or apportion fees among both parties. *Id.* at 37(a)(5)(A)(iii).

Here, the Court has denied the asserted privileges as to most of the email logs, and ordered Premier Dealer to produce most of the privilege log documents to Defendants. Because the bulk of

the privilege log emails clearly do not seek legal advice, Premier Dealer should have produced it without necessitating the motion to compel. Therefore the Court finds that Premier Dealer violated its discovery obligations pursuant to Rule 37 by failing to comply with Defendants discovery requests. As such, the Court finds that an award of attorney fees and reasonable costs occasioned by the filing of this motion are appropriate. Accordingly, Defendants' request for fees and costs is granted.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that **Defendants's Motion to Compel** (R. Doc. 100) is **DENIED AS MOOT, DENIED IN PART,** and **GRANTED IN PART** as set forth below:

**IT IS DENIED AS MOOT** as to its request for "trade secrets" as set forth above.

**IT IS DENIED** as to Defendants' Request for Production No. 28 with regards to the privilege log document numbers:  1, 2, 8, 9, 32 in full, and denied in part as to numbers 19 and 20 as set forth in detail above.

**IT IS GRANTED** as to Defendants' Request for Production No. 28 with regards to the privilege log document numbers: 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49. It is granted in part as to numbers 19 and 20 as set forth in detail above.

**IT IS FURTHER ORDERED** that an award of reasonable expenses, including attorney's fees,  and reasonable costs necessitated by the filing of this motion, pursuant to Rule 37(a)(5)(A) is awarded against Premier Dealer.

**IT IS FURTHER ORDERED** that Defendants shall file a Motion to Fix Attorney's Fees

into the record, **no later than Wednesday, December 4, 2013** along with: (1) an affidavit attesting to its attorney's education, background, skills, and experience; (2) sufficient evidence of rates charged in similar cases by other local attorneys with similar experience, skill and reputation; and (3) the documentation required by Local Rule 54.2. Any opposition to the fee application shall  be filed no later than **Wednesday, December 11, 2013.** Defendants shall notice the Motion to Fix Attorney's Fees for submission on **Wednesday, December 18, 2013,** and the motion shall be heard on that date without oral argument.

New Orleans, Louisiana, this 8th day of November 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**